UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA S. PLOWMAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>　　　　Defendant. | Case No. 1:23-cv-01201-HBK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY [2]<br><br>(Doc. Nos. 17, 19) |

　　　　Melissa S. Plowman seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 17, 19). For the reasons set forth more fully below, the Court denies Plaintiff's motion for summary judgment, grants Defendant's cross motion for summary judgment, and affirms the Commissioner's decision.

---

[1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social Security, as the Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

## I.   JURISDICTION

Plaintiff protectively filed for disability insurance benefits on March 11, 2019, alleging an onset date of May 19, 2018. (AR 239-45). Benefits were denied initially (AR 90-106, 124-28), and upon reconsideration (AR 107-23, 132-37). Plaintiff appeared before an Administrative Law Judge ("ALJ") on October 31, 2022. (AR 43-89). Plaintiff was represented by counsel and testified at the hearing. (*Id.*). On November 28, 2022, the ALJ issued an unfavorable decision (AR 13-42), and on July 7, 2023 the Appeals Council denied review (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II.   BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 43 years old at the time of the hearing. (*See* AR 320). She graduated from high school. (AR 52). She lives with her husband and two stepdaughters aged 12 and 16. (AR 51). Plaintiff has work history as a pharmacy technician. (AR 53, 81). Plaintiff testified that she was diagnosed with Bell's palsy in May 2018, and she started having seizures in October 2018. (AR 55-56). She reported that she would be capable of working if it wasn't for the seizures, and the longest she has gone without a seizure since 2019 is two to three weeks. (AR 53, 58). Plaintiff testified that "90 something percent" of the time the seizures occur when she is asleep, and she acknowledged that treatment records do not show an etiology or a cause for the seizures. (AR 62-63). Plaintiff reported the seizures seem to be triggered by heat and overexertion. (AR 64). After she has a seizure, Plaintiff experiences a severe headache "the majority of the time," muscle soreness, and a "foggy" head. (AR 65-66). She can only last for 15 minutes when gardening or doing light housework because of fatigue, and she gets tremors when she is "really tired." (AR 72-75). Plaintiff testified she can walk for 15 to 20 minutes before she has to stop, sit for an unlimited time if she is in a calm, quiet space, and lift a maximum of 5 to 10 pounds. (AR 77-80). Plaintiff also testified that she has panic disorder and depression. (AR 60-61).

////

### III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 404.1520(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 19, 2018, the alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder, Bell's palsy, and tremors. (AR 19). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 21). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except due to fatigue she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit for approximately 6 hours in an 8-hour day; and stand and/or walk for approximately 6 hours in an 8-hour day. She can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; occasionally be required to balance as part of her job requirements; occasionally stoop and crouch; and frequently kneel and crawl. The claimant can only occasionally have exposure to extreme heat. She can never work around unprotected heights or moving and/or dangerous machinery and never be required to drive motor vehicles during work hours or as part of their job requirements. The claimant needs to avoid bright lights, that is lights in excess of retail or office-type lighting and needs to avoid flashing-type lights. The claimant can handle, finger, and feel on a frequent basis bilaterally.

(AR 22). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a pharmacy technician. (AR 33). In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including office helper, routing clerk, and housekeeping cleaner. (AR 34). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from May 19, 2018, through the date of the decision. (AR 35).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review: whether the RFC is supported by substantial evidence. (Doc. No. 17 at 11-20).

## VII.   DISCUSSION

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the RFC because he improperly considered the medical opinion of Jane Hwang, M.D. (Doc. No. 17 at 11-19). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*,

2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).  Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

In August 2020, Dr. Jane Hwang completed a physical medical source statement and opined that Plaintiff can walk 10 city blocks without rest or severe pain; stand and sit for more than 2 hours at one time; sit and stand/walk for at least 6 hours in an 8-hour working day; does not need to shift positions or include periods of walking around during an 8-hour working day; will need to take unscheduled breaks during a working day 1 to 2 times per week for 10 to 15 minutes; does not need a cane or hand-held assistive device; can lift and carry up to 50 pounds rarely, 10 pounds occasionally, and less than 10 pounds frequently; can never climb ladders higher than 3 feet; can frequently twist, stoop, crouch, squat, and climb stairs; has no manipulative limitations; would be off-task 5% of a typical workday; is capable of "moderate stress – normal work"; and would miss work about 3 days per month if she tried to work full time. (AR 751-54). The ALJ found Dr. Hwang's opinion not very persuasive, particularly in terms of absences, lifting, and carrying, and unscheduled breaks. (AR 31).

First, as to the supportability factor under the regulations, the ALJ specifically found Dr. Hwang provided "little support for the physical limitations, noting medication could make [Plaintiff] tired and she had a head tremor but had full strength, normal cognition, normal objective studies; would need the short breaks twice a week due to feeling confused and body shakes." (AR 31, 751-52). Plaintiff failed to identify or challenge these findings in his opening brief; thus, he has waived his opportunity to raise these issues. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider issues not raised

with specificity in plaintiff's opening brief); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Regardless, under the new regulations "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 404.1520c(c)(1) (emphasis added). Here, as part of her argument regarding the consistency factor, Plaintiff generally references her self-reports to Dr. Hwang that she experienced seizure-like spells 2 to 3 times per week with whole body shaking and stiffening. (Doc. No. 17 at 15 (citing AR 889 (noting "all [seizure] activity is now from sleep"), 970 (noting normal ambulatory EEG and negative brain MRI)). However, Plaintiff's subjective report is not "objective medical evidence and supporting explanation" presented by Dr. Hwang in support of the opined limitations, as required under the regulations; and the ALJ relied on clear, convincing, and unchallenged reasons to discount Plaintiff's subjective claims. (AR 24-29). Based on the foregoing, and regardless of any evidence in Dr. Hwang's examination notes that may be considered more favorable to Plaintiff, substantial evidence supports the ALJ's unchallenged finding that Dr. Hwang provided little support for the opined limitations, particularly as to absences, lifting and carrying, and unscheduled breaks. (AR 31 (noting the clinical findings and objective signs" identified by Dr. Hwang in the opinion included normal brain MRI, normal EEG, normal strength and cognition, and a head tremor), 751); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

As to the consistency factor, the ALJ found

> the several absences per month are not consistent with the evidence indicating the claimant's seizures occur almost always at night and despite alleging headaches and fatigue afterwards, remained alert and oriented on exams. Furthermore, missing work is not consistent with the repeated negative testing that did not confirm a true epileptic nature of events. Furthermore, lifting and carrying only 10 pounds occasionally is not consistent with repeated exams showing the claimant has normal strength. It is with giving greatest deference to the claimant that the reduction to the light exertional level was given above and the further reduction noted by Dr. Hwang is not consistent with the evidence.

9

1  (AR 31) (internal citations omitted).³  First, Plaintiff argues the "ALJ's rejection of Dr. Hwang's
2  limitations because of a 'lack of confirmation of true epileptic nature of events' is a
3  mischaracterization of both Dr. Hwang's and multiple other treating neurological specialists'
4  objective treatment records which support these limitations." (Doc. No. 17 at 12).  In support of
5  this argument, Plaintiff cites "online medical literature from the NIH [National Institute of
6  Health]" and further argues that (1) documentation of Plaintiff's "epileptic symptomology" is
7  consistent throughout her treatment records and (2) the ALJ "fails to explain how the fact that
8  [Plaintiff's] physicians have noted that her seizures may be 'pseudo-seizures' or 'nonepileptic' in
9  nature  and that there could be a psychological component to her disorder due to an 'atypical
10 presentation' and a lack of documented relief from increasing dosages and variation of antiseizure
11 medication negates [Plaintiff's] consistently documented severe symptomology that would result
12 in multiple absences and unplanned breaks". (Doc. No. 17 at 12-17 (citing AR 64-65 (Plaintiff's
13 testimony at the hearing that she has seizures when napping or sleeping most of the time, has
14 bladder incontinence, feels foggy, and has headaches after a seizure), 628 (self-reporting
15 nocturnal seizures with aura, fatigue, gasping for air, tongue biting, chronic headache), 810 (self-
16 reporting 3-5 seizures per week with dizziness and heaviness), 846 (self-reporting seizures twice
17 a week with aura, confusion, gasping for air, confusion), 889 (self-reporting seizures 2-3 times a
18 week), 970 (same), 1275 (self-reporting seizures 2-4 times a month triggered by bright lights and
19 less sleep), 1325 (reporting most seizures at night, aura, head jerking, incontinence, and tongue
20 and cheek biting)).

21      However, a plain reading of the ALJ's reasoning indicates he did not rely solely on a lack
22 of confirmation as to the epileptic nature of events, as argued by Plaintiff, but rather on the
23 "*repeated negative testing* that did not confirm a true epileptic nature of events." (AR 31
24 (emphasis added)).  Pursuant to regulations, "[t]he more consistent a medical opinion(s) … is
25 with the evidence from other medical sources and nonmedical sources in the claim, the more

---

³ Plaintiff does not challenge the ALJ's finding that lifting and carrying 10 pounds occasionally is not consistent with repeated normal strength findings on examination throughout the record.  (AR 31).  As this issue was not raised in Plaintiff's opening brief, the Court declines to consider it here.  *Carmickle*, 533 F.3d at 1161 n.2.

10

persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discount an opinion that is unsupported by the record as a whole, or by objective medical findings).  In support of this argument, the ALJ decision included citations to MRI imaging in March 2019 showing no abnormal or "suspicious enhancement"; normal awake EEG recording in July 2019; normal awake, drowsy, and asleep EEG in August 2019; normal 72-hour ambulatory EEG in October 2019; and a normal three-day ambulatory EEG with "no epileptiform abnormalities seen" in September 2022; (AR 31 (citing AR 494, 618, 670, 807-08, 933, 961).  Neurology treatment notes from September 2022 cited by the ALJ indicated as follows:

> The neurological examination is normal. Brain imaging is normal. MRA of the brain/MRA of the neck and MR venogram are normal. Patient has had numerous EEGs done which have been negative except 1 revealing electrographic seizure at a local neurologist office area.  I do not have the EEG tracing.  She also had a six-day prolonged EEG recording which was negative. …. Her clinical picture is atypical. …. Also numerous EEGs that are normal is also atypical.

(AR 31, 1325).  Moreover, to the extent Plaintiff relies on her own self-reports and testimony as support for her argument, the ALJ properly discounted Plaintiff's subjective complaints.  (AR 24-29).  As noted above, Plaintiff failed to offer any argument in her opening brief as to the ALJ's consideration of her testimony.  *Carmickle*, 533 F.3d at 1161 n.2 (court may decline to consider issues not raised with specificity in plaintiff's opening brief); *see also Kim*, 154 F.3d at 1000.

Plaintiff additionally argues that the ALJ "fails to explain the significance of" Plaintiff's seizures occurring mostly at night, and cites evidence in the record that Plaintiff's seizures "do not only occur at night," as opined by the ALJ, and are "aggressive in nature in terms of biting, shaking and loss of bowel and urinary control; that they are followed by significant postictal/confusion symptomology period, and fatigue." (Doc. No. 17 at 15-18 (citing AR 64-65, 628, 810, 846, 889, 970, 1275, 1325)).  However, the entirety of the ALJ's reasoning in the decision was "the several absences per month [opined by Dr. Hwang] are not consistent with the evidence indicating the claimant's seizures occur almost always at night *and despite alleging headaches and fatigue afterwards, remained alert and oriented one exams*." (AR 31 (emphasis

11

added)). Thus, a plain reading of the ALJ's finding indicates that (1) contrary to Plaintiff's argument the ALJ did not find her seizures only occur at night, rather, they are "almost always at night" which accords with Plaintiff's testimony that 90% of her seizures are nocturnal (AR 62) and (2) the ALJ's specific reason for discounting the absence limitation opined by Dr. Hwang is that the resulting symptoms alleged by Plaintiff after her nocturnal seizures, including fatigue and headaches, are inconsistent with evidence in the record of that Plaintiff was consistently noted to be alert and oriented on physical examination. (AR 31, 481-82, 575, 629, 813, 1324); 20 C.F.R. § 404.1520c(c)(2).

For the foregoing reasons, despite evidence in the record that could be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude the limitations assessed by Dr. Hwang as to absences, lifting and carrying, and unscheduled breaks, were not consistent with the evidence from other medical sources in the longitudinal treatment record. *Burch*, 400 F.3d at 679; *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence). After viewing the ALJ's reasoning in light of the record as a whole, the ALJ's finding that Dr. Hwang's physical opinion was "not very persuasive" is supported by substantial evidence after proper consideration of the supportability and consistency factors.

Finally, Plaintiff argues there is an "ambiguity in the record regarding diagnosis and the resulting symptomology" because the ALJ rejected Dr. Hwang's assessed limitation regarding absences and unscheduled breaks for the reasons discussed above, and "arbitrarily accepted 'hazard precautions' due to seizures from the non-examining non-expert physicians." (Doc. No. 17 at 19). Plaintiff contends this "ambiguity" triggers the ALJ's duty to develop the record for "clarification of [Plaintiff's] limitations/diagnoses." (*Id*. at 19-20). "The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered," even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)) (internal quotation marks omitted). This duty is "triggered when the evidence is ambiguous or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Thomas*, 278 F.3d at 958.

However, it is Plaintiff's duty to prove that she is disabled; and this burden cannot be shifted to the ALJ simply by virtue of the ALJ's duty to develop the record. *See Mayes*, 276 F.3d at 459-60. Here, Plaintiff fails to specifically identify or challenge the ALJ's consideration of the prior administrative medical findings in her opening brief. *Carmickle*, 533 F.3d at 1161 n.2 (court may decline to consider issues not raised with specificity in plaintiff's opening brief). Rather, the ALJ properly relied on medical opinions and prior administrative medical findings, including Dr. Hwang's as discussed above, objective and clinical findings, and treatment notes regarding Plaintiff's claimed impairments. The ALJ did not find, and the Court is unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole. Thus, the ALJ did not err in failing to further develop the record in this case.

Based on the foregoing, the Court finds no error in the ALJ's assessment of the RFC based on all relevant evidence in the record, including Dr. Hwang's medical opinion. *Bayliss*, 427 F.3d at 1217.

////

////

////

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly evaluated the medical opinion evidence and properly assessed the RFC. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) is DENIED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 19) is GRANTED and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.

3.  The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:  September 30, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE